OPINION OF THE COURT
Helen E. Freedman, J.
Plaintiffs seek a judgment declaring that the apartment in question is not subject to the New York City Rent and Rehabilitation Law (Rent Control Law [Administrative Code of City of New York § Y51-1.0 et seq.]). Defendant leased the apartment in 1962 and has been the statutory tenant since 1964 when the lease expired. Defendant is a not-for-profit corporation which, among other things, locates apartments for individuals who have undergone treatment for psychological disorders.
Since 1962, various individuals affiliated with defendant have occupied the apartment as their primary residence pursuant to the lease which provided: “29. With respect to the occupancy of the subject premises, it is understood that they are to be occupied by various members of the tenant, a charitable organization, and as shall be designated by the tenant from time to time.”
In April 1984, plaintiff served a 30-day notice to terminate the tenancy. Plaintiffs claim that the defendant is not subject to the Rent Control Law because it is a charitable institution. Plaintiffs rely on New York City Rent and Eviction Regulations § 2 (f) (2). In the alternative, plaintiffs claim that defendant is not a “tenant” protected by the Rent Control Law. Plaintiffs cite Koenig v Jewish Child Care Assn. (NYLJ, Nov. 26, 1984, p 13, col 1 [App Term, 1st Dept]).
*944 Plaintiffs’ reliance on section 2 (f) (2) is misplaced. That section clearly exempts certain landlords of the enumerated categories from the strictures of rent control. Thus, where an apartment owned by a charitable, educational or nonprofit institution is rented to a tenant solely as a result of the tenant’s affiliation with the landlord institution, that apartment is not subject to rent control, and the tenant has no statutory right to remain after the affiliation ends. (Trustees of Columbia Univ. v Sperling, 44 AD2d 819.) The section works to the benefit of such a landlord, and has no application to the instant situation concerning a nonprofit tenant.
Plaintiffs’ alternative argument is that defendant is not a tenant qualified for protection under rent control. Initially, it is noted that a corporation may be a tenant. (Administrative Code § Y51-3.0 [h], [m]; Stahl Assoc. Co. v Candid Prods., 122 Misc 2d 754.) If the apartment is subject to rent control, then defendant, as a tenant, is entitled to the protection of Administrative Code § Y51-6.0, which governs evictions of tenants from rent-controlled premises. Here, plaintiffs’ claim that the apartment is not subject to control is contradicted by plaintiffs’ own actions and the documentation reflecting those actions. That plaintiffs have consistently treated the apartment as rent controlled is evidenced by the fact that several rent increases have been obtained by application to the Office of Rent Control, in compliance with the statute. (New York City Rent and Eviction Regulations § 31 et seq.) There is no claim whatsoever that the use of the apartment has changed in any manner since the inception of the tenancy, nor that the tenant has used the premises other than as specifically contemplated by the lease. Under these circumstances, the landlord must be found to have waived any claim that the apartment is not subject to rent control. Thus, since defendant is clearly a permissible tenant under the Rent Control Law, and since plaintiffs have waived any arguable claim to the contrary, it is hereby declared that the apartment in question is subject to the provisions of the New York City Rent and Rehabilitation Law.
This determination is in no way affected by Koenig v Jewish Child Care Assn. (supra). First, both Koenig and Matter of Cale Dev. Co. v Conciliation & Appeals Bd. (94 AD2d 229), cited therein, involve a tenant’s right to a renewal lease under the Rent Stabilization Law (Administrative Code § YY51-1.0 et seq.).
However, to the extent that Koenig and Cale (supra) set forth a test for determining the nature of “corporate occupancy”, those *945 decisions are instructive. In Cale, the First Department held that in evaluating the primary residence status of a corporate tenant, the court must look to the residency of the actual occupants, as intended by the lease. There, the lease designated a particular person “rather than a class of individuals as the sole occupants” (94 AD2d, at p 233). Thus, even if Cale were applicable to a rent control situation, the instant case has a specific lease provision that contemplates use of the apartment by members of a certain class of persons. There is no claim, as there was in Cale, that the contemplated use has ever been altered or violated by the tenant.
In Koenig (supra), the Appellate Term found that the premises were not really the primary residence of anyone. It appears that the apartment was used by the corporate tenant as a temporary shelter for girls whose primary residences were elsewhere. In the instant case, it is undisputed that the apartment is the primary residence of whoever occupies it. Thus, even if Koenig were applicable to a case involving rent control, it is distinguishable.*
In accordance with the foregoing, the motion for summary judgment is denied, and there being no issues of fact, it is declared that the apartment is subject to the New York City Rent and Rehabilitation Law and that judgment shall be for defendant.

 After issuance of this decision, Koenig was reversed (107 AD2d 542 [1st Dept]). The Appellate Division held that the group home/tenant was entitled to the protection of the Code of the Rent Stabilization Association of New York City, Inc. Specifically, the court said “During the period that they lived at the group home, they had no other places of residence” (p 545).